## GROSVOLD v. BOOTH FISHERIES CO.

### THE EL HURD.

### THE COMMONWEALTH.

### No. 12923.

District Court, W. D. Washington, N. D.
Nov. 20, 1931.

Bronson, Jones & Bronson, of Seattle, Wash., for libelant.

Bogle, Bogle & Gates, of Seattle, Wash., for respondent and claimant.

NETERER, District Judge.

This is a libel for salvage referred to the commissioner to take testimony and report findings of fact and conclusions of law to the court. Findings and conclusions have been filed, and exceptions have been filed thereto.

The commissioner, in substance, finds that the libelant is the sole owner of the El Hurd, a wood construction craft 64 feet long, 11 feet beam, 6½ feet draft, gross tons 39, net tons 26, halibut fishing type; that the libelant lived at Sand Point, Simeonof Island, Alaska; that, among other things, he served a mail route touching several islands in the Shumagin group; Ralph Grosvold, a son, was master of the El Hurd; that the value of the "El Hurd" was $7,000; that the Commonwealth, a craft of wooden construction, length 75 feet, beam 22 feet 5 inches, draft 9 feet, gross tons, 80, net tons, 60, with three-cylinder engine, 110 horse power, valued at $12,000; and then gives a brief description of Simeonof Island and harbor taken from the United States Coast Pilot, Alaska, Part II, Yakutat Bay to Arctic Ocean, published by the Department of Commerce, United States Coast and Geodetic Survey in 1916:

"Simeonof Island (Chart 8881) the most easterly of the group is about 4 miles long and 3½ miles wide. It is composed of two clusters of hills, the southeastern and higher ones being 1,600 feet high. These hills are separated by a low plateau which is nearly cut in two by a very irregular shaped harbor.

"The coast of the island is fringed with reefs and shoals. Those on the south and southwest sides are variously reported to extend from 3 to 7 miles off shore; those on the east side, 3 miles; and those on the other shores, ½ mile.

"Simeonof harbor is on the western side of the island. A reef extends about ½ mile westward from the north point of the entrance to the harbor. Off the south point of the entrance is a low, flat rocky island fringed

with reefs. The harbor is protected from all winds; the entrance is tortuous, with reefs on either side; the shores are rocky and the water very shoal. The inner anchorage is 2½ fathoms, with not over 2 fathoms at the lowest tide; the bottom is smooth gravel. Anchorage, exposed to westerly winds, may be had in the outer part of the harbor, in about 4 fathoms, about ½ mile inside the entrance."

Libelant's Exhibits B and C are photographs giving views of entrance to Simeonof harbor.

April 7, 1929, the Commonwealth entered Simeonof harbor, anchoring in the outer harbor to obtain fish bait. About 10 o'clock that evening a southwesterly breeze began blowing, and the master of the Commonwealth hove anchor and headed for open water. Within a few minutes he struck a reef. The tide had just turned to ebb. The master approached the El Hurd, anchored on the inner bay, for assistance. Ralph Grosvold thereupon proceeded to the Commonwealth as near as practicable. The crew on the Commonwealth, it is found, had packed their belongings, put them in dories, and the master of the Commonwealth had the crew's food and supplies and loose gear and put them in dories, and placed them on board the El Hurd, and the entire crew went on board the El Hurd. The El Hurd returned to the inner harbor. The Commonwealth at the time was down by the head with a list to the starboard, pounding on the reef. Later in the day, the El Hurd, with the master of the Commonwealth and his crew, returned to the stranded vessel. Lines were run from the Commonwealth to the El Hurd, and she was pulled off the reef and towed to the inner harbor and her nose shoved into the bank and shore anchors put out. The El Hurd stood by until it was found the pumps were relieving the Commonwealth, and then went to anchor nearby. During the night the Commonwealth dragged loose her shore anchors and drifted into the harbor and stranded on a sandy beach. The tide had ebbed after the Commonwealth had gone on the beach. The master and engineer of the Commonwealth had taken the water out of the hull of the Commonwealth sufficient to put the engine in operation, and at 12 o'clock noon the El Hurd began pulling on the Commonwealth, and shortly afterwards, with the assistance of the engines on the Commonwealth, was pulled off the beach and taken to anchor. Ralph Grosvold was familiar with the channel leading into Simeonof harbor, having navigated the channel about once a month for a period

of ten years, and that there was danger to the El Hurd in approaching the Commonwealth; and further finds that the El Hurd rendered services for the master of the Commonwealth in taking a message to Unga; and also finds that, after the rescue of the Commonwealth from the reef and getting it into a place of safety in the inner harbor, a strong southwesterly wind arose; and concluded that a salvage award of $2,500 be made—$1,500 to the El Hurd and $1,000 to the master.

Motion is made to suppress deposition taken of the master of the Commonwealth. The master of the Commonwealth was present and testified; that eliminated the necessity for taking deposition, and, having testified, he should have been examined on the whole case, unless it was distinctly understood that the deposition could be used. There was no such understanding, and the court, in its consideration of the evidence in this case, excluded it (I have read the entire record, except such deposition). I do not think it is of any material effect.

I think the findings of fact of the commissioner are sustained by the evidence, and will be adopted by the court, except as herein noted with relation to conclusions. I think the values of the several craft are fully as high as the testimony warrants, but the conclusions will not be adopted.

Salvage service is a service which contributes immediately to the preservation and rescue of property in peril at sea. Admiral Evans (D. C.) 286 F. 442, 1923 A. M. C. 327. It has also been held, and I think it is good law, that "simply pulling on a ship a considerable time before favorable tide and swell coincided with floating," is not enough to establish a claim for salvage services. Lincoln S. S. Line v. United States (C. C. A.) 7 F. (2d) 886, 1925 A. M. C. 1273. I think the allowance of $2,500 is unreasonable. And the allowance of $1,000 to the master cannot in any event be justified. There was danger to the Commonwealth, and yet, after she was released in the first instance and landed on the sandy beach at high tide, there being other craft available for her rescue, it could have been accomplished and the craft saved. While there was some danger to the El Hurd in entering the inner harbor, because of the rugged formations surrounding and the foul matter—kelp—it was not dangerous to an experienced man such as the master of the El Hurd. The waves and the breakers of the water did not interfere materially with the El Hurd in any service which it performed, and, lying by, she was not exposed, because

she was in a safe harbor, as she had been anchored before she went to the rescue.

I think the allowance should be more than a mere towage. I think $1,200 an ample reward to the El Hurd, and the master, Ralph Grosvold, did not risk life or exposure to injury in any sense. He was as safe on the El Hurd in the performance of the duty as he would have been lying at anchor, and $300 would be ample award. The Commonwealth was not on fire; there were no hazards of explosion of any sort; nothing of external contact—a service clearly distinguished from the services rendered in The Kekoskee, 47 F.(2d) 235, where this court allowed $11,000. The value of the Kekoskee oil tanker was $500,-000. The reward granted in that case was $6,000 to five men; they were exposed to intense heat; the Kekoskee was enveloped in flames; the wharf was on fire, and there was imminent danger of explosion, and exposure to the hot oil, on explosion, to the men, which created an extreme hazard; and the court held that the men were entitled to more than the tug because of the dangers encountered.

The allowance of $300 will generously compensate the master for his services and the exposure endured; and $1,200 will be a generous award to the El Hurd. The crew of the Commonwealth, who assisted, make no claim.

A decree may be presented in harmony herewith; this memoranda and the commissioner's finding of fact to be considered as findings and conclusions of the court.